**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINA
NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| **VALENTYNA GUDYM,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | | * |
| | Civil Action No: 4:12-cv-85 | |
| | * | |
| **LAW OFFICES OF** | * | |
| **SHAPIRO, BROWN & ALT, LLP,** *et al.* | * | |
| | * | |
| Defendants. | * | |

**SB&A AND PFC'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS**

Defendants Shapiro, Brown & Alt, LLP ("SB&A") and Professional Foreclosure Corporation of Virginia ("PFC"), by counsel, hereby submit this memorandum in support of their motion to dismiss the Complaint filed by Plaintiff Valentyna Gudym pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof, state as follows:

**Introduction and Background**

SB&A is a law firm with offices in Fairfax and Virginia Beach, which practices in the area of foreclosure law.  Compl. at ¶3.  SB&A's clients appoint PFC as trustee to conduct foreclosure sales.  Compl. at ¶4.  Although the subject complaint is brought under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*, ("FDCPA"), the complaint does not involve collection activities such as harassing phone calls or repeated demands for money.  Rather, under the guise of the FDCPA, the present complaint takes issue with the statutory notices and procedures that SB&A afforded to Plaintiff, as provided for under Virginia law, prior to foreclosure.  Incidentally, Plaintiff's property has not been foreclosed.

The gravamen of the lawsuit is the allegation that BAC Home Loans Servicing, L.P. ("BAC"), who appointed the trustee, was not the "owner" of the note, and (incorrectly) speculates that BAC is not the beneficiary, noteholder, or creditor under her Deed of Trust. Instead, Plaintiff asserts that Fannie Mae is the true owner of the loan.   Yet, Plaintiff admits that BAC is her loan servicer, <u>see</u> Compl. at ¶12, and further claims that she has a loan modification with BAC. <u>See</u> **Exhibit 1**.[1] However, because she claims she has a loan modification with BAC, Plaintiff claims the amount due on the loan reinstatement figures she received are "false."

Specifically, Plaintiff takes issue with communications she received in the summer of 2011, including a June 2, 2011 letter that she asserts improperly identified BAC as creditor and beneficiary of her deed of trust.[2] Upon this premise, Plaintiff attacks BAC's appointment of PFC as trustee under the deed of trust.[3]  Plaintiff further claims that the June 2011 letter falsely

---

[1] Although Plaintiff relies upon Exhibit 1, Defendants attach the same only for the purpose of the motion to dismiss.  Defendants are aware of a second modification agreement contemplated by the parties dated as of January 11, 2010.   <u>See</u> Exhibit 1-A.  Further, the BAC payment history attached as Exhibit 7, reflects payments held in suspense and credited to the 5/2008 and 6/2008 payments, in the amount of $2335.87, consistent with the amounts indicated in the correspondence.

[2] Plaintiff also includes irrelevant time-barred allegations concerning a September 23, 2010 letter from Shapiro & Burson, LLP, which Plaintiff attacks because it (i) claims that the creditor to whom the debt is owed is BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP ("BAC"), <u>see</u> Compl. at ¶¶30-35; (ii)  claims that BAC is beneficiary under Plaintiff's mortgage loan, <u>see</u> Compl. at ¶¶36-37; and (iii) claims that the original promissory note is unavailable, <u>see</u> Compl. at ¶¶37-44.

[3] Throughout the complaint, Plaintiff asserts that she received the identified letters from "Defendants," however, copies of the letters attached to the complaint indicate that they are from Shapiro & Burson, LLP, now known as SB&A, as opposed to PFC.

stated that she owed $369,282.63.  See Compl. at ¶46.[4] Plaintiff does not identify a correct amount.

Under Count I, Plaintiff asserts that both the June 2, 2011 and August 1, 2011 letters "falsely state[d] . . . the amount of the debt," which plaintiff claims violates 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(5) and/or 1692e(10).  Compl. at ¶65.  Count II asserts that the 2011 letters "falsely stat[e] that [BAC] was the beneficiary under the subject deed of trust, the Noteholder, Holder or creditor, which plaintiff claims violates 15 U.S.C. §§1692e, 1692e(2)(A) and/or 1692e(10).  Compl. at ¶68.  Count III asserts that BAC had no authority to appoint "Defendants" as substitute trustee, and therefore "Defendants" has no right to attempt to conduct the foreclosure sale or to transfer the property."  Compl. at ¶¶72-75.  From that faulty premise, Plaintiff claims that "Defendants" violated 15 U.S.C. §1692f(6), which prohibits non-judicial action to effect "dispossession or disablement of property".  See id.   For the reasons that follow, Plaintiff's claims must be dismissed.

**Standard Of Review**

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although the Court must accept well-pled allegations in Plaintiff's Complaint as true, it is not required to accept conclusory factual allegations, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), and cannot assume that "the

---

[4] Plaintiff claims that, on July 15, 2011, she disputed the debt and informed "Defendants" that she had a loan modification.   See Compl. at ¶55.  In response, she explains that Shapiro & Burson sent her a letter acknowledging receipt of the letter, and thereafter on August 3, 2011, provided her verification of the debt. The Complaint indicates that the August 3, 2011, verification letter is attached as Exhibit E, however, that exhibit only included the reinstatement figures dated August 1, 2011.  Rather, a copy of the verification letter is attached hereto as Exhibit 2, which indicated that the original promissory note was available for inspection, and included a copy of the note, the reinstatement s figures, and payment history.

[plaintiff] can prove facts which [he or she] has not alleged." Orcilla v. Bank of Am., N.A., 2011 U.S. Dist. Lexis 46639, 4-5 (N.D. Cal. Apr. 25, 2011) (quoting Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); Papasan v. Allain, 478 U.S. 265, 286 (1986); J.D. Associates LTD, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Id. at 558 (citation omitted).

## DISCUSSION

**I.   BAC is the holder, loan servicer, and beneficiary of the loan, and therefore constitutes the creditor to whom the debt is owed.**

Plaintiff's core challenge rests upon the faulty premise that BAC was not authorized to

4

appoint and did not validly appoint the trustee.  Although Plaintiff admits that BAC is her loan servicer, Compl. at ¶12, she claims the appointment is invalid because BAC is not the owner of the loan, Compl. at ¶9, and speculates that BAC was not the beneficiary of the subject deed of trust, the noteholder, holder, or creditor under the loan.   Factually, the challenge to the appointment of the trustee (and the right of the trustee to foreclose), is belied by the assignment from MERS to BAC, see **Exhibit 2**, attached hereto.  Further, to the extent that Plaintiff infers that only the owner of a loan could foreclose, such contention is contradicted by Virginia law.

Substantively, Plaintiff's claims are insufficient to attack the foreclosure.  Virginia law provides that a foreclosure may be prosecuted by the beneficiary under the deed of trust, see Va. Code §55-59(9) which would include any nominee of the lender such as MERS, Tapia v. United States Bank, N.A., 2010 U.S. Dist. LEXIS 62448, 19-20 (E.D. Va. June 22, 2010), the noteholder or its agent, Horvath v. Bank of N.Y., 641 F.3d 617 (4th Cir. 2011), including loan servicer, see Larota-Florez v. Goldman Sachs Mortgage Co., 719 F. Supp 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir July 28, 2011), or a non-holder in possession with rights of holder.  See Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).[5]

Indeed, Plaintiff confuses the distinction between an owner of a note or underlying debt, versus its holder.  Under the Commercial Code, a party entitled to enforce the note need not be the owner of the underlying debt.  The comments to the Commercial Code explain that: "[t]he right to enforce an instrument and ownership of the instrument are two different concepts. . . . Ownership rights in instruments may be determined by the principles of the law of property,

---

[5] Generally, the terms of industry standard promissory notes secured by residential real estate indicate that "[t]he lender or anyone who takes this Note by transfer and who is entitled to receive payment is called the 'noteholder,'" which would allow enforcement by a non-holder in possession with rights of a holder.  See Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).

independent of Title 3, which do not depend upon whether the instrument was transferred under Section 3-203." Virginia Code, §8.3A-203, Official Comment 1.  Under Virginia Code §8.3A-301, the right to enforce a promissory note inures to its holder, not its owner.

Thus, in a foreclosure challenge under Virginia law, the United States Court of Appeals for the Fourth Circuit explained that "[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it." Horvath v. Bank of N.Y., N.A., 641 F.3d 617, 621 (4th Cir. 2011); see also Bolouri v. Bank of America, N.A. et al., No. 1:10-cv-00225-LO-TCB (E.D. Va. August 24, 2010) aff'd per curiam at Appeal No. 10-2069 (4th Cir August 11, 2011).

Likewise, in Rosales v. Countrywide Home Loans, Loudoun Co. Cir Ct. Case No. 54255 (2010), attached hereto as **Exhibit 3**, Judge Horne determined that a note endorsed in blank may be enforced by its possessor, whoever that may be.  Specifically, Judge Horne held that such a possessor who may only be a loan servicer has the right enforce the rights and remedies contained in the Note and the Deed of Trust that secures it, including the right to foreclose on the Property. See id. Although Rosales is an unreported case from the Circuit Court of Loudoun County, Mr. Rosales appealed.  The Supreme Court of Virginia denied his appeal, yet gave an unusual explanation for doing so, specifically noting its agreement with Judge Horne's analysis, explaining:

> Upon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal, the Court is of the opinion there is no reversible error in the judgment complained of.  Accordingly, the Court refuses the petition for appeal.

See Pedro Rosales v. Countrywide Home Loans n/k/a/ Bank of America Mortgage, Supreme Ct. of Virginia Record No. 102289 (April 12, 2011) (emphasis added) (Ex. H).

Virginia statutory law recognizes that the deed of trust secures repayment of the note. See Va. Code §55-59(1) ("The deed [of trust] shall be construed as given to secure the performance of each of the covenants entered into by the grantor as well as the payment of the primary obligation."). Notably, Virginia Code §55-59(9) specifically authorizes either the beneficiary or noteholder, or holder of a majority interest in a note, to appoint a substitute trustee on the deed of trust securing such debt.

Specifically, that statute provides:

> The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute. When the instrument of appointment has been executed, the substitute trustee or trustees named therein shall be vested with all the powers, rights, authority and duties vested in the trustee or trustees in the original deed of trust. . . .
>
> .

Va. Code §55-59(9).

To the extent that Plaintiff suggests that the owner of the loan must initiate the foreclosure, rather than the noteholder or loan servicer, such distinction has been and must be rejected. Indeed, in Rosales, addressing Countrywide's right to foreclose as a loan servicer, the court found such authority both under contract and agency law:

> In addition to Countrywide's rights under the Uniform Commercial Code, it also has the authority under the Adjustable Rate Note and Deed of Trust to exercise the rights and remedies set forth therein. The Adjustable Rate Note states: "The Lender or anyone who takes this Note by transfer and who is entitled to

7

receive payments under the Note is called the 'Note Holder." Adjustable Rate Note ¶1.  As stipulated, Countrywide possesses the Adjustable Rate Note.  Moreover, Countrywide as loan servicer, has the right to collect (or receive) payments due under the Adjustable Rate Note and the Deed of Trust.  See, Deed of Trust ¶20.  Hence, Countrywide is the "Note Holder," "The Note Holder may enforce its rights under the [the Adjustable Rate Note]" against Plaintiff, including the rights and remedies contained in the Deed of Trust.  Adjustable Rate Note ¶9. Indeed, the rights and remedies in the Deed of Trust protect the Note Holder from possible losses that occur if Plaintiff fails to make payments under the Adjustable Rate Note.  Adjustable Rate Note ¶11.  <u>Therefore, Countrywide, as the Note Holder, has the right to foreclose on the Property.  Even if Countrywide was not the Note Holder, it is still authorized under the contract and agency law, to initiate foreclosure proceedings on the Property</u>.

<u>Id.</u> at *6-7 (emphasis added) (Ex. H).

Likewise, this Court has also determined that loan servicers alone have the authority to foreclose on property that secured the loans that they service on behalf of the holder.  <u>See Larota-Florez v. Goldman Sachs Mortgage Co.</u>, 719 F.Supp 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton has the right to collect payments <u>on behalf of the holder</u> and the right to foreclose upon default. Therefore, Litton's appointment of Professional as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law.") (emphasis added); <u>cf. Sprint Communs. Co., L.P. v. APCC Servs.</u>, 554 U.S. 269, 271 (2008) ("assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor," and noting that "operators assigned their claims lock, stock, and barrel, and precedent makes clear that an assignee can sue based on his assignor's injuries.").

And the Deed of Trust itself confirms that the servicer has the right to collect payment.

8

See **Exhibit 4** (Deed of Trust).  Specifically, Section 20 of the Deed of Trust provides that "[A]

sale [of the Note] might result in a change in the entity (known as the "Loan Servicer") that

collects Periodic Payments due under the Note and this Security Instrument and performs other

mortgage loan servicing obligations under the Note, this Security Agreement, and Applicable

Law. . . . If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other that the

purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with

the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the

Note purchaser unless otherwise provided by the Note purchaser." Id. at p. 12, §20.  Here,

there is no allegation that the "owner" assumed any of the loan servicing obligations, and the

mere sale of the Note does not affect the servicing of the loan, including the ability of the

servicer to prosecute a foreclosure.[6]

Plaintiff admits that BAC is her loan servicer, and that the note was endorsed to

Countrywide Home Loans, see Ex. 7, which is identified as the former name of BAC Home

Loans Servicing, LP.  See Compl. at ¶8, and Ex. C.  And in attacking the amount owed,

Plaintiff specifically relies upon a loan modification agreement with BAC.  See Ex. 1.

To the extent that Plaintiff attempts to infer that Fannie Mae should have made the

---

[6] Indeed, the Commercial Code limits a borrower's ability to assert that a third-party has a claim to an instrument.  Notably, Virginia Code §8.3A-305(c) provides:

> [I]n an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (§ 8.3A-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. . . .

Va. Code §8.3A-305(c); see also Va. Code §55-59.1(B).

appointment, such claim is undermined by Virginia law, the loan modification agreement, and Fannie Mae's published servicing guidelines.

Under those guidelines, Fannie Mae itself designates its servicers as holders of the loan. Announcement 08-12 dated May 23, 2008, attached as **Exhibit 5**, confirms that for Fannie Mae loans, Fannie Mae is at all times the owner of the mortgage note. See id. p. 1 ("Fannie Mae is at all times the owner of the mortgage note, . . ."); accord Fannie Mae 2011 Servicing Guide, Part I §202.07.01.

The Announcement also confirms that upon commencement of the foreclosure representation, the servicer is entitled to enforce the note as servicer in its own name, and that temporary transfer of possession of such note occurs automatically and immediately. Specifically, page 2 of Announcement 08-12 explains:

> In order to ensure that a servicer is able to perform the services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the servicer, acting in its own name, represents the interests of Fannie Mae in foreclosure actions, bankruptcy cases, probate proceedings, or other legal proceedings.

> This temporary transfer of possession occurs automatically and immediately upon the commencement of the servicer's representation, in its name, of Fannie Mae's interests in the foreclosure, bankruptcy, probate, or other legal proceeding.

> When Fannie Mae transfers possession, the servicer becomes the holder of the note as follows:

> • If a note is held at Fannie Mae's DDC, Fannie Mae has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the note and is authorized and entitled to enforce the note in the name of the servicer for Fannie Mae's benefit.

> • If the note is held by a document custodian on Fannie
> Mae's behalf, the custodian also has possession of the note on
> behalf of the servicer so that the servicer has constructive
> possession of the note and the servicer shall be the holder of the
> note and is authorized and entitled to enforce the note in the name
> of the servicer for Fannie Mae's benefit.

Announcement 08-12; accord Fannie Mae 2011 Servicing Guide, Part I §202.07.02.[7]

Thus, any holding that a servicer could not foreclose on a Fannie Mae loan would be contrary not only to Virginia law, Fannie Mae's own guidelines and position, and would be inconsistent with national lending and servicing standards.

To the extent that Plaintiff suggests that BAC must demonstrate more than being a holder of the original note, such claim must be rejected.  Indeed, in Jimenez v. Citibank, Va. S. Ct. Record No. 101956 (December 16, 2011), attached hereto as **Exhibit 6** the Supreme Court of Virginia rejected a borrower's demand that the CitiBank produce a chain of custody of the note.  In Jimenez, the Virginia Court affirmed the trial court's dismissal with prejudice of a borrower's challenge to a foreclosure, which observed that the borrower did not allege in her complaint that she was current on her obligations under the note and deed of trust or that parties other than CitiBank or the trustees were seeking to foreclose on the property.  Slip Op. at 3.

On Appeal, the Court noted that the deficiencies in the Ms. Jimenez' argument:

> In this case, Jimenez alleged that the party instituting the
> foreclosure proceedings possessed the promissory note and did
> not allege that the note was freely transferable negotiable
> instrument.  She did not allege that she was current in her
> payments or that foreclosure was not a proper remedy against her
> under the terms of the deed note or deed of trust.  Rather, she
> disputed that CitiBank had the authority to act pursuant to the
> note and deed of trust because CitiBank and Equity did not
> demonstrate – and the land records did not reflect – how

---

[7] This information is publicly available at https://www.efanniemae.com/sf/guides/ssg/annltrs/ pdf/2008/0812.pdf, and https://www.efanniemae.com/sf/guides/ssg/svcg/svc061011.pdf.

CitiBank came to possess the note.

Op. at p. 5.

Rejecting her demand that CitiBank prove its chain of possession of the note, the Supreme Court explained that "[f]or nearly two hundred years, the law of Virginia has been to the contrary." Slip Op. at 5. In doing so, the Court explained that "Virginia's statutory scheme for extrajudicial foreclosure does not afford her a right to the information she seeks." Op. at p. 6. Here, Plaintiff does not allege that she is current or that a third party has made a demand upon her under the loan, see Ex. 8 infra, and her speculative claims regarding some unknown and unidentified noteholder are likewise insufficient.

Moreover, BAC is the record beneficiary under the Deed of Trust pursuant to the assignment of the Deed of Trust in its own name, see Ex. 1.  See Va. Code §55-66.01 ("Nothing in this statute shall imply that recordation of the instrument of assignment or a certificate of transfer is necessary in order to transfer to an assignee the benefit of the security provided by the deed of trust, mortgage or vendor's lien.") (Emphasis added)); Tapia v. United States Bank, N.A., 718 F. Supp. 2d 689, 696-97 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1856, 2011 U.S. App. Lexis 15845 (4th Cir. August 1, 2011).

Specifically, in Tapia, the borrowers challenged a foreclosure initiated by MERS, claiming that MERS was not the holder of the monetary obligations secured by the deed of trust.  See id. at n. 21.  In that case, which involved a deed of trust with identical provisions regarding MERS, the Court explained:

> The Court finds this argument unavailing because the Deed of Trust authorized MERS to foreclose the Property in the event that Plaintiffs defaulted on the loan. The Deed of Trust states that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of

> MERS."  The Deed of Trust also provides "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing and canceling this Security Instrument."  Under the terms of the Deed of Trust, MERS has two roles: beneficiary and nominee for Lender. By signing the Deed of Trust, Plaintiffs agreed that MERS, as nominee for Lender and Lender's successors and assigns, had the right to foreclose the Property and recognized that MERS could take any action required of Lender. Furthermore, Plaintiffs make no legally-supported argument and plead no facts in the Amended Complaint as to why MERS as nominee did not have the right to foreclose and sell the Property in accordance with law or custom.   As such, Plaintiffs' allegation that none of Defendants have the authority to enforce the Deed of Trust is untenable.

Id.  Here, MERS has assigned its rights to BAC, see Ex. 1, and accordingly, it is properly identifiable as record beneficiary, and entitled to proceed with foreclosure.[8]

In sum, the present challenge to BAC's right to foreclose is inconsistent with Virginia law.  Undisputed is that BAC is the loan servicer and record beneficiary.  Further, Plaintiffs unsubstantiated claim that BAC is not the holder of the note, is inconsistent with her claims under the modification agreement.  Accordingly, Counts II and III must be dismissed.

**II.     Plaintiff's claim that SB&A "falsely" identified BAC as creditor is belied by its status as beneficiary, holder, loan servicer, and the terms of the deed of trust.**

As discussed above, BAC is not only the beneficiary, holder, and loan servicer, but under the terms of the Deed of Trust, it is the proper party to whom payments are to made and

---

[8] Virginia law also recognizes that another form of assignment of those rights is by endorsement of the note.  See Va. Code §55-66.01 (permitting assignment of the debt to be recorded, at the option of the parties to such assignment, and providing [f]or purposes of this statute, the word "assigned" shall include endorsed, pledged, hypothecated or otherwise transferred. . . .") (Emphasis added).  Thus, as holder of the note, BAC is properly designated as beneficiary.

to whom payments are owed.  Indeed, under the Note, which is attached to the August 3, 2011 letter, attached hereto as **Exhibit 7**, and which is referenced in the Complaint at paragraph 57 (and presumably accidentally omitted from Exhibit E), the borrower's promise to pay is to the Lender, and the Note further provides that "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Noteholder'." Ex. 7.

Moreover, in the case of a Fannie Mae loan, for the reasons discussed above, including the terms of the deed of trust and the Fannie Mae Guidelines, if anyone other than the servicer was designated as creditor, that would be likely to confuse the borrower.  Because the loan servicer is entitled to collect the debt, it is properly designated as creditor.  See generally Gomez v. GMAC Mortg., LLC, Nos. 10-13287, 10-13288, 10-13442, 2010 U.S. Dist. Lexis 140626, 2010 WL 5625673, at *3 (E.D. Mich. Dec. 15, 2010) (From the mortgage documents provided by GMAC, it is apparent that Amera was the mortgage originator, GMAC was the mortgage servicer, and MERS was the mortgagee, which means that these Defendants are creditors, not debt collectors.").  Indeed, BAC's status as record beneficiary, pursuant to the recorded assignment (and as holder of the promissory note), establishes it as a proper creditor. Id., see also Lettenmaier v. Fed. Home Loan Mortg. Corp., 2011 U.S. Dist. Lexis 88277, 39-40 (D. Or. Aug. 8, 2011) ("In deeds of trust appointing MERS as a lender's nominee, "MERS becomes the mortgagee of record [and] is listed as the grantee in the official records maintained at county register of deeds offices." Rinegard-Guirma v. Bank of Am. Nat. Ass'n, No. CV-10-1065-PK, 2010 U.S. Dist. LEXIS 107619, 2010 WL 3945476, at *4 (D. Or. Oct. 6, 2010) (internal quotation omitted). As mortgagee, MERS is essentially the creditor.") (emphasis added); Nicholson v. OneWest Bank, 2010 U.S. Dist. LEXIS 45993, 9-12 (N.D. Ga. Apr. 20,

14

2010). Here, whether as holder, loan servicer, or assignee under the recorded assignments, BAC is properly identified as creditor.

III.    **Plaintiff's claims concerning the September 2010 correspondence are not actionable. The allegations are not related to the specific causes of action pled, are time-barred as a matter of law, and are otherwise immaterial.**

To the extent that Plaintiff includes allegations relating to a September 2010 correspondence, see note 2, supra, such claims are not properly plead. Notably, none of the counts are related to such correspondence. Further, any claim regarding such letter is time barred as matter of law, as any claim in connection with such letter would have accrued more than one-year before the filing of the subject complaint. See 15 U.S.C. §1692k(d). Finally, to the extent that Plaintiff challenges the availability of the note, such claims are immaterial.

Specifically, Plaintiff loosely alleges that SB&A misrepresented that the original note was unavailable, suggesting that the original note was available to BAC. Compl. at ¶40. Accordingly, such claim is not actionable.

Unclear is how such "misrepresentation", if true (for purposes of argument), could harm Plaintiff. With the original note at the time of the letter, as holder or non-holder in possession with rights of holder, see Va. Code §8.3A-301(ii), BAC would be entitled to enforce the note, and Plaintiff would not be afforded the right under Va. Code 55-59.1(B) to seek adequate protection. Thus, the notice of unavailability afforded Plaintiff greater rights than she would have if the note was available at that time.

Specifically, under Virginia Code §55-59.1(B), where the original promissory note is unavailable, the trustee is afforded a safe harbor from challenges to the sale if the beneficiary notifies the borrower of such unavailability, and thereafter provides the trustee an affidavit to

15

that affect.  See Va. Code §55-59.1(B).[9]

Under that statute, if the borrower believes that he may be subject to more than one claim under the promissory note, she can petition the Court for adequate protection.  Absent a request and grant of adequate protection, where an affidavit is furnished to the trustee, Section 55-59.1 provides that "[i]f the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale."  Id.

---

[9] Specifically, Virginia Code §55-59.1(B) provides:

> B. [1] If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and [2] the beneficiary submits to the trustee an affidavit to that effect, [3] the trustee may nonetheless proceed to sale, [4] provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee. [5] The notice shall further advise the person required to pay the instrument that if he believes he may be subject to a claim by a person other than the beneficiary to enforce the instrument, he may petition the circuit court of the county or city where the property or some part thereof lies for an order requiring the beneficiary to provide adequate protection against any such claim. [6] If deemed appropriate by the court, the court may condition the sale on a finding that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. [7] Adequate protection may be provided by any reasonable means. [8] If the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale.

Va. Code § 55-59.1 (alterations added, emphasis added).

16

Here, SB&A is not the trustee. <u>See</u> Comp. at Ex. C.[10]   Further, the trustee does not furnish the notice, it is furnished by the beneficiary, or on its behalf.  The affidavit referred to is provided to the trustee, solely to allow the trustee a safe-harbor against foreclosure challenges. It is not furnished to the borrower, nor is it required to be furnished to the borrower at the time "<u>beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable.</u>"  Va. Code §55-59.1(B).  Moreover, under subsection (C) of the statute: "Failure to comply with the requirements of notice contained in this section shall not affect the validity of the sale, and a purchaser for value at such sale shall be under no duty to ascertain whether such notice was validly given."  Va. Code §55-59.1(C).

Thus, to the extent that Plaintiff complains that she received such notice, then she obtained the opportunity to dispute BAC's right to foreclose if she truly believed that it was not the correct entity, by petitioning the circuit court for adequate protection.  Tellingly, Plaintiff never sought such remedy.   And her own actions, in engaging BAC in loan modification discussions further, belie her claim.  <u>See</u> Ex. 1.

---

[10] However, Virginia Code §26-58 expressly provided that an attorney for the lender may serve as trustee.  That section provides:

> The mere fact that a trustee in a deed of trust to secure a debt due to a corporation is a stockholder, member, employee, officer or director of, or counsel to, the corporation, does not disqualify him from exercising the powers conferred by the trust deed nor does it render voidable a sale by such trustee in the exercise of the powers conferred on him by the trust deed so long as he did not participate in the corporation's decision as to the amount to be bid at the sale of the trust property. Moreover, if the lender secured by the deed of trust bids the amount secured, including interest through the date of sale and costs of foreclosure, the trustee's participation in fixing the bid price by the party secured shall not be deemed improper and such sale shall not be rendered voidable solely by reason of his participation. . . .

<u>Id.</u>

17

Consequently, the alleged "misrepresentation" is neither material, nor would it mislead the borrower in any way.  See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. Wash. 2010) ("false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f."); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757-59 (7th Cir. 2009); See Holliday v. Virtuoso Sourcing Group, LLC, 2011 U.S. Dist. Lexis 127760, 8-9 (S.D. Ill. Nov. 4, 2011); Albritton v. Sessoms & Rogers, P.A., 2010 U.S. Dist. Lexis 78371, 18-19 (E.D.N.C. Aug. 3, 2010); Diaz v. United Collection Bureau, 2011 U.S. Dist. Lexis 64815 (N.D. Cal. June 16, 2011) ("False but non-material misrepresentations are not likely to mislead the least sophisticated consumer, and therefore are not actionable under the FDCPA.").

In Donohue v. Quick Collect, Inc., the Ninth Circuit, in adopting the materiality standard for alleged false representations under the FDCPA, explained

> In Hahn v. Triumph Partnerships LLC, 557 F.3d 755 (7th Cir. 2009), Chief Judge Easterbrook concluded for a panel of the Seventh Circuit that a false or misleading statement is not actionable under § 1692e unless it is material. With reasoning that we consider persuasive, Chief Judge Easterbrook observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." Id. at 757 (citing Carter v. United States, 530 U.S. 255, 120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000); Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). There is no "reason why materiality should not equally be required in an action based on § 1692e." Id. The purpose of the FDCPA, "to provide information that helps consumers to choose intelligently," would not be furthered by creating liability as to immaterial information because "by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." Id. at 757-58. The Seventh Circuit framed materiality as a corollary to the well-established proposition that "[i]f a statement would not mislead the

18

> unsophisticated consumer, it does not violate the [Act]--even if it
> is false in some technical sense." Id. at 758 (quoting Wahl v.
> Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009)
> (alterations in original)). Thus, "A statement cannot mislead
> unless it is material, so a false but non-material statement is not
> actionable." Id. The Sixth Circuit has reached the same
> conclusion. See Miller v. Javitch, Block & Rathbone, 561 F.3d
> 588, 596 (6th Cir. 2009) (concluding that a false but non-material
> statement is not actionable under § 1692e).

Donohue v. Quick Collect, Inc., 592 F.3d at 1033.  Thus, even if the note was available, the

alleged statement that the note was unavailable is immaterial, and in fact afforded the borrower

greater rights that she would otherwise have.  Accordingly, Plaintiff's related allegations do not

support a viable claim under the FDCPA.


### IV.   Count I not properly pled, and is contradicted by the allegations of the Complaint and the Exhibits.

Under Count I, Plaintiff claims that SB&A failed to disclose the amount of the debt in

the June and August, 2011 correspondences.  A copy of the June letter is attached to the

Complaint at Exhibit B, and on the third page, specifically states:  "As of June 2, 2011, our

client has advised us that the amount of the debt is $369,282.63."  The August 1, 2011 letter

recites reinstatement figures in response to Plaintiff's counsel specific request for an

itemization as to what was claimed by the creditor, see **Exhibit 8**, and is part of the validation

package referred to in paragraph 57.   See Ex. 7.  Although Plaintiff takes issue with the

amount due, she offers no indication as to what she believes is owned, or why the amount

indicated is "falsely stated." Moreover, these amounts indicated on the August 1, 2011 letter

are part of the package of documents issued on August 3, 2011, which is derived from the

payment history furnished by BAC, and provided as part of its effort to provide verification of

19

the debt as requested by Plaintiff.  See Ex. 7.[11]

In Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999), the Fourth Circuit

explained that verification merely requires that a debt collector confirm in writing the amount

that the creditor is demanding:

> Contrary to Appellants' contention, verification of a debt involves
> nothing more than the debt collector confirming in writing that
> the amount being demanded is what the creditor is claiming is
> owed; the debt collector is not required to keep detailed files of
> the alleged debt. See Azar v. Hayter, 874 F. Supp. 1314, 1317
> (N.D. Fla.), aff'd, 66 F.3d 342 (11th Cir. 1995), cert. denied, 516
> U.S. 1048, 133 L. Ed. 2d 666, 116 S. Ct. 712 (1996). Consistent
> with the legislative history, verification is only intended to
> "eliminate the … problem of debt collectors dunning the wrong
> person or attempting to collect debts which the consumer has
> already paid." S. Rep. No. 95-382, at 4 (1977), reprinted in 1977
> U.S.C.C.A.N. 1695, 1699. There is no concomitant obligation to
> forward copies of bills or other detailed evidence of the debt.

Chaudhry, 174 F.3d at 406; accord Clark v. Capital Credit & Collection Servs., 460 F.3d 1162,

1173-74 (9th Cir. 2006) (adopting the Chaudhry standard); Gough v. Bernhardt & Strawser, PA,

2006 U.S. Dist. Lexis 47785, 14-15 (M.D.N.C. 2006); Monsewicz v. Unterberg & Assocs.,

P.C., 2005 U.S. Dist. Lexis 5435 (S.D. Ind. 2005).[12] Thus, verification of the debt is merely

confirming in writing that the amount being demanded is what the creditor is claiming is owed.

---

[11] Notably, the verification letter was furnished in good faith despite Plaintiff's untimely request, which was made more than 30 days from the June 2, 2011 letter.  Further, the breakdown indicated in the letter were solely in response to Plaintiff's counsel's specific request to provide a breakdown of the amount claimed by the creditor.  See Ex. 8.

[12] In Chaudhry verification included an account history, and a letter stating the amount of inspection fees due and statement that the amount was correct. Addressing the sufficiency of the creditors response as to an amount owed for inspection fees, the Chaudhry Court determined that a letter to counsel of the debtor that restated the amount of inspection fees and indicating that the amount was correct was sufficient. See 174 F.3d at 406. ("[I]n a January 19th letter to counsel, Gallerizzo restated the amount of the inspection fees and indicated that the amounts were correct. Nothing more is required.") (Emphasis added).

"Nothing more is required." Chaudhry, 174 F.3d at 406.

Here, Shapiro & Burson, LLP verified the debt, and furnished an account history, just as that provided in Chaudhry, to Plaintiff's counsel. Furnishing such information does not make an alleged debt collector a guarantor of the accuracy of the information, particularly under these circumstances where the payment history is included. Rather, once the debt collector confirms in writing that this is what the creditor is claiming if owed, nothing more is required.

V. **The Complaint Fails to Allege any Facts to Support any claim that PFC violated the FDCPA.**

Finally, the Complaint is devoid of any facts to support naming PFC as a defendant. Although the Complaint uses the generic term "Defendants," all of the acts including the referenced letters are from SB&A or BAC. The only allegation in the Complaint that even address PFC is paragraph 53, which referenced the Appointment of Substitute Trustee at Exhibit C. See Compl. at Ex C. The Appointment of Substitute Trustee appointed PFC as the substitute trustee under the Deed of Trust effective May 16, 2012. The Complaint is entirely devoid of allegations that PFC took any action that might have violated the FDCPA.[13]

In an attempt to circumvent this fact, the Complaint alleges that PFC is "the alternate voice and alter ego" of SBA. See Compl. at ¶4. However, Plaintiff misconceives the purpose of the doctrine of "alter ego," which generally is applicable in the context of piercing the corporate veil, not applicable here. Moreover, the only fact Plaintiff alleges in support of her assertion that PFC is the alter ego of SBA is that PFC is appointed to act as substitute trustee for loans that are referred to SBA for foreclosure. See Compl. at ¶4. No facts are alleged to support an alter ego theory, rather the converse is true. SBA is a law firm, and PFC is the

---

[13] No foreclosure took place in this case. See Compl. at Ex. D.

substitute trustee appointed to exercise the power of sale under the deed of trust. Because the Complaint fails to allege any facts to demonstrate that PFC is the alter ego of SBA, and alleges only actions taken by SBA, specifically the correspondences from SBA, PFC should be dismissed entirely,

WHEREFORE, Shapiro, Brown & Alt, LLP and Professional Foreclosure Corporation of Virginia respectfully request that the Complaint be dismissed, that it be awarded its fees in the action, and for such other relief as may be just and proper.

Dated: July 2, 2012

Respectfully Submitted,
**SHAPIRO, BROWN & ALT, LLP and PROFESSIONAL FORECLOSURE CORPORATION OF VIRGINIA**
*By Counsel*

By: */s/ Bizhan Beiramee*
Bizhan Beiramee, Esq., (VSB # 50918)
Beiramee & Cohen, P.C.
6663 B Old Dominion Drive
Third Floor
McLean, Virginia 22101
Phone: (703) 483-9600
Fax:    (703) 483-9599
Email: bbeiramee@beiramee.com
*Counsel for Shapiro, Brown & Alt, LLP and Professional Foreclosure Corporation of Virginia*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of July, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

Dale Wood Pittman, Esq.
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
(804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Kristi Cahoon Kelly, Esq.
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
703-277-9774
Fax: 703-591-9285
Email: kkelly@siplfirm.com

Leonard Anthony Bennett, Esq.
Susan Mary Rotkis, Esq.
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@cox.net
Email: srotkis@clalegal.com

Matthew James Erausquin, , Esq.
Consumer Litigation Associates PC (Alex)
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
703-273-6080
Fax: 888-892-3512
Email: matt@clalegal.com

By:   */s/ Bizhan Beiramee*_____
       Bizhan Beiramee

23