# EXHIBIT B



**JAMES L. MCLEAN; EDITH L. MCLEAN, Plaintiffs - Appellants, v. RONALD A. RAY, Esquire; ECONOMOU, FORRESTER & RAY, Defendants - Appellees.**

No. 11-1544

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

2012 U.S. App. LEXIS 14857

May 16, 2012, Argued
July 17, 2012, Decided

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. (1:10-cv-00456-LO-TCB). Liam O'Grady, District Judge. *McLean v. Ray*, 2011 U.S. Dist. LEXIS 53663 (E.D. Va., May 18, 2011)

**DISPOSITION:** AFFIRMED.

**COUNSEL:** ARGUED: Allen Huberth Sachsel, Fairfax, Virginia, for Appellants.

David John Gogal, BLANKINGSHIP & KEITH, PC, Fairfax, Virginia, for Appellees.

ON BRIEF: Michael L. Chang, BLANKINGSHIP & KEITH, PC, Fairfax, Virginia, for Appellees.

**JUDGES:** Before AGEE and DIAZ, Circuit Judges, and HAMILTON, Senior Circuit Judge. Judge Diaz wrote the opinion, in which Judge Agee and Senior Judge Hamilton joined.

**OPINION BY:** DIAZ

**OPINION**

DIAZ, Circuit Judge:

Edith and James McLean sued Ronald Ray, an attorney, and his law firm, Economou, Forrester & Ray, alleging that Ray violated the Fair Debt Collections Practices Act in the course of seeking to collect a debt the McLeans owed to his client. Finding the McLeans' claims meritless, the district court granted Ray's motion for summary judgment and denied the McLeans' cross motion for summary judgment. The McLeans timely appealed. We affirm.

I.

A.

Edith McLean is a ninety-six-year-old widow. Edith's son, James McLean, manages her affairs and finances under general and medical powers of attorney. Currently at a medical care facility [*2] in Maryland, Edith twice resided at ManorCare, a nursing home facility in Arlington, Virginia. Edith was first admitted to ManorCare on July 30, 2006 and was discharged on September 7, 2006. Upon Edith's first admission to ManorCare, James signed a contract with the facility providing that the McLeans would be liable for all costs (to include attorney's fees) incurred by ManorCare in collecting payment on the account. The contract also provided that it would terminate upon Edith's date of

discharge; however, if Edith were readmitted within fifteen days of discharge, the contract would continue in effect as of the date of readmission.

In November 2007, Ray sued Edith in Arlington County General District Court on behalf of ManorCare, to collect a debt allegedly owed to ManorCare for services it rendered to Edith during her first stay. The parties resolved the matter and ManorCare nonsuited the case.

Approximately twenty months after her first stay, Edith was readmitted to ManorCare without signing a new contract. Payment disputes again arose between the McLeans and ManorCare, and ManorCare again engaged Ray to attempt to collect the amounts it claimed it was owed. On March 25, 2009, while [*3] Edith was still a resident at ManorCare, Ray mailed Edith a letter claiming that she owed ManorCare $15,814.44, plus interest, reasonable attorney's fees, and costs. Two days later, Ray sued Edith in the Arlington County Circuit Court (the "Arlington Complaint") alleging that she failed to pay ManorCare for services rendered.

In preparing the Arlington Complaint, Ray reviewed a standard collection referral form, Edith's earlier residence agreement, and an itemized statement pertaining to Edith's account, all of which he had received from ManorCare consistent with his normal practice before filing debt collection actions. [1] The referral sheet stated that Edith had been admitted to ManorCare on July 30, 2006 and remained in the facility. Ray noticed that the amount sought on the referral sheet did not match the figures ManorCare provided on the itemized statement. After consulting with ManorCare, Ray revised the draft complaint to state a reduced amount owed. The Arlington Complaint, however, also asserted--incorrectly it turns out--that Edith had resided continuously at ManorCare since her initial admission in July 2006, and therefore alleged a breach of the contract James signed in connection [*4] with that admission.

> 1 Ray admitted that he also customarily received a sworn affidavit from his clients attesting to the amount sought, but that he did not receive one from ManorCare in this instance. Ray explained that he typically requests an affidavit to facilitate the entry of a default judgment pursuant to Virginia state court procedures. In this case, Ray explained that--given the adversarial nature of the proceedings from an early stage--he had no reason to expect that the McLeans would default and thus no practical need for the affidavit. Moreover, the district court found it undisputed that Ray "decided not to use a supporting affidavit in the McLean matter because Ms. McLean continued to reside at the facility, and Mr. Ray assumed that he would need to amend the complaint prior to the entry of a final judgment order to include claims for additional services." J.A. 994-95.

Before Ray filed suit, his secretary called his attention to the 2007 lawsuit that the parties had resolved. Ray admitted that he reviewed the file pertaining to the earlier matter in a cursory fashion, concluding that the dated information was not useful and that he had no reason to otherwise question the facts [*5] provided by ManorCare with respect to the 2009 claim.

Edith left ManorCare on May 8, 2009. In the months following her departure, Ray exchanged several emails and phone calls with the McLeans' attorneys. It was not until the end of September, however, that the McLeans first asserted that the 2006 contract was no longer valid because of the twenty-month lapse between Edith's discharge in September 2006 and readmission in April 2008. Ray responded that he would look into the matter and "clean up" the lawsuit if he confirmed that the 2006 contract no longer applied. J.A. 561. To that end, Ray requested Edith's file from his client, but it took ManorCare some time to retrieve it. In the interim, Ray filed an amended complaint (the "Arlington Amended Complaint") on October 29, 2009 without striking the claim for attorney's fees.

The Arlington Amended Complaint increased the ad damnum to $70,147.67 to encompass services rendered to Edith from the filing of the initial Arlington Complaint until her discharge. The Arlington Amended Complaint further alleged that Edith, by accepting the benefit of the services ManorCare rendered to her, implicitly obligated herself to pay ManorCare in quantum [*6] meruit for their reasonable value. The Arlington Amended Complaint also continued to seek interest, and attorney's fees and costs based on the 2006 contract. The next day, Edith's counsel served and filed an Answer and Counterclaim, pleading as a defense that there was no written contract between the parties and providing specific dates of Edith's discharge and readmission to ManorCare.

By November 2009, Ray was able to confirm that

Edith had not continuously resided at ManorCare, and conceded that no written contract existed to support a claim for attorney's fees. In January 2010, the parties presented an agreed order dismissing the written contract claim and granting leave to amend the suit to include an oral contract claim. Ray filed a Second Amended Complaint, asserting claims for breach of an oral contract and an implied contract, dropping the claim for attorney's fees, and seeking judgment in the amount of $65,809.50.

B.

In the course of litigating the debt collection proceeding, the McLeans sought discovery. Among other documents, they requested a list of ManorCare employees and their contact information. ManorCare prepared a list responsive to the request, listing the national [*7] headquarters address and phone number as the contact information for several employees, and submitted it to Ray. Ray noticed that the list was missing contact information for two ManorCare employees, which he inserted before forwarding the discovery response to the McLeans.

While the debt collection action was pending, Ray filed a separate action for the appointment of a guardian and conservator for Edith. Ray contended that this proceeding was warranted by James's history of neglect of Edith's needs, including his purported failure to pay for her care and residence at another nursing home, which ultimately resulted in the termination of Edith's residence agreement at that facility. Ray admitted that recovering the debt owed to ManorCare was one purpose for filing the guardianship proceeding, but that his legitimate concerns for Edith's welfare also motivated his actions. Ray prosecuted the guardianship proceeding against the McLeans for nearly three months after Edith left ManorCare, but then nonsuited the action.

C.

The McLeans sued Ray and his law firm in federal district court for violations of the Fair Debt Collections Practices Act ("FDCPA"). They twice amended their complaint; [*8] the second amended complaint, the operative complaint before the district court, initially contained twenty-four counts, twelve counts for James and twelve for Edith, alleging the same violations of the FDCPA for each plaintiff. However, the McLeans voluntarily dismissed several counts, including twelve claims that the district court indicated were likely time-barred by the FDCPA's statute of limitations. [2] The McLeans also voluntarily dismissed two other counts alleging that Ray violated the FDCPA by "instituting and/or continuing and prosecuting" the guardianship proceeding, id. 27, which they argued Ray initiated "to bring pressure on James, using the proceeding as a 'club' to induce or threaten James to pay a claimed, but disputed, debt," id. 23-24.

> 2  On appeal, Ray argues that all of the claims are barred by the FDCPA's statute of limitations. Because we conclude that the McLeans' claims fail on the merits, we need not address this separate argument.

The district court thus had before it ten remaining counts alleging that Ray violated the FDCPA by (1) seeking incorrect amounts, seeking attorney's fees, and failing to determine the accuracy of ManorCare's claim prior to signing and [*9] filing the Arlington Amended Complaint, (2) falsely making a quantum meruit claim "with no basis in fact," (3) falsely representing that he would not assert the 2006 contract as a basis for recovery when amending the complaint, and (4) providing a false discovery response.

The parties cross-moved for summary judgment, which the district court granted in favor of Ray. The McLeans timely appealed, challenging the award of summary judgment and a discovery ruling by the magistrate judge.

II.

We review de novo a grant or denial of summary judgment, applying the same standard applied by the district court. *Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 938 (4th Cir. 1991)*. Summary judgment is appropriate only when the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. A district court considering a motion for summary judgment "must view the evidence in the light most favorable to the nonmoving party," *Unus v. Kane, 565 F.3d 103, 115 (4th Cir. 2009)*, and draw all inferences in favor of the nonmovant, *Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)*.

III.

The FDCPA is a strict liability [*10] statute that

prohibits false or deceptive representations in collecting a debt, as well as certain abusive debt collection practices. 3 Attorneys seeking the repayment of a debt on behalf of a client are debt collectors within the ambit of the FDCPA. *Heintz v. Jenkins, 514 U.S. 291, 292, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995)*. False statements in the course of litigation constitute violations of the act. See *Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229 (4th Cir. 2007)* (rejecting the argument that an attorney debt collector was entitled to immunity for his litigating activities). The FDCPA, however, contains a "bona fide error" defense that absolves a debt collector from liability for a violation if he can show by a preponderance of the evidence that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *15 U.S.C. § 1692k(c)*.

> 3  The prohibited practices include "any false deceptive, or misleading representation or means in connection with the collection of any debt"; *15 U.S.C. § 1692e*, "false representation of the character, amount, or legal status of any debt;" id. *§ 1692e(2)(A)*; "use of any false representation [*11] or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;" id. *§ 1692e(10)*; "use [of] unfair or unconscionable means to collect or attempt to collect any debt;" id. *§ 1692f*, and "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law;" id. *§ 1692f(1)*.

A.

The McLeans assert that Ray's claims as to the amounts due to ManorCare violated the FDCPA in several respects. First, they contend that Ray misrepresented the debt owed by improperly requesting attorney's fees despite the fact that the break in Edith's stay at ManorCare rendered the contract entitling ManorCare to such fees inapplicable. On this point, the McLeans argue first that Ray's review of his own files--specifically, the file pertaining to the 2007 lawsuit--should have alerted him to the break in stay, and further that he was alerted to it by the McLeans' counsel. Next, they contend that Ray violated the FDCPA by seeking the payment of prejudgment interest in the complaint.

The McLeans further argue that the bona fide error [*12] defense does not shield Ray because he knew the amounts claimed were erroneous and did not maintain adequate procedural safeguards to avoid such errors. On the latter point, the McLeans argue that Ray's dereliction of his own protocol--of requesting and receiving a sworn affidavit from his clients attesting to the amount of the claimed debt--establishes his failure to comply with procedures for avoiding error.

In granting summary judgment in favor of Ray, the district court--relying on our decision in *Amond v. Brincefield, Hartnett & Assocs., P.C., 175 F.3d 1013*, [published in full-text format at *1999 U.S. App. LEXIS 4815*], 1999 WL 152555 (4th Cir. Mar. 22, 1999) (unpublished table decision)--determined that the bona fide error defense applied to absolve Ray of liability. Although by unpublished decision, this court in Amond affirmed the district court's finding that debt collector lawyers had no reason to question the amount of debt they were attempting to collect for their clients, stating that lawyers "cannot be held liable for what appears to be an honest dispute regarding the amount of the debt, so long as there exists a colorable factual basis for the higher amount claimed by their client." *1999 U.S. App. LEXIS 4815, [WL] at *2* (quoting the district court). This court [*13] also rejected the Amond plaintiff's argument that the FDCPA created a heightened duty of investigation for lawyers engaged in ordinary debt collection activity. *1999 U.S. App. LEXIS 4815, [WL] at *3*.

Noting that ManorCare had provided Ray a referral form, a residence agreement, and an itemized bill for services, which Ray reviewed (and challenged), the district court correctly concluded that there was a colorable basis for ManorCare's claim. Addressing the McLeans' argument that Ray would have been alerted to the fact that Edith did not reside continuously at ManorCare had he more carefully reviewed his own files, the district court also correctly concluded that *Amond* permitted Ray to rely on his client's word. 4

> 4  Like the district court, we credit Ray's explanation for why he did not insist on receiving a sworn affidavit from ManorCare for the amount owed. At bottom, our inquiry focuses on whether the procedures Ray employed were reasonably adapted to avoid error. We are satisfied that they were, and that Ray is thus entitled to the benefit of

the bona fide error defense.

As for the McLeans' separate argument that Ray deliberately asserted a false claim for attorney's fees despite having been put on notice by the [*14] McLeans' attorneys that there was a break in Edith's stay at ManorCare, the district court found (and we agree) that Ray was diligent in investigating the matter. From the moment Ray was alerted to the contention that there was a break in Edith's stay that rendered the attorney's fees provision of the initial contract inapplicable, he diligently investigated to confirm the truth of the assertion. We also agree with the district court that Ray amended the complaint to remove the claim for attorney's fees as soon as he was able to confirm that the 2006 contract no longer applied.

The district court also correctly rejected the McLeans' allegation that Ray violated the FDCPA by seeking prejudgment interest. As the district court noted, Virginia law permits plaintiffs to seek prejudgment interest, which is awarded at the discretion of the trier of fact. See, e.g., *Upper Occoquan Sewage Auth. v. Blake Constr. Co., 275 Va. 41, 655 S.E.2d 10, 23 (Va. 2008)* (citing *Va. Code Ann. § 8.01-382*). The McLeans nevertheless protest that Ray sought prejudgment interest on amounts purportedly owed by the McLeans that were not yet due and payable, as they had not yet been billed. However, the district court determined [*15] that "the complaint is fairly read as seeking only pre-judgment interest on the amounts past due at the time of judgment." J.A. 1001. We agree with the district court on this score, as well. Further, any risk that ManorCare would have been able to recover damages to which it was not entitled--i.e., prejudgment interest on amounts that were not yet due and payable--is mitigated by the fact that a decision to award such interest in the first instance is determined at the discretion of a presumably competent and reasonable trier of fact.

B.

The McLeans next assert that the quantum meruit claims lacked a factual basis, and that the amount asserted therefore violates the FDCPA. In support, they cite Ray's response to the McLeans' interrogatory that sought the basis for ManorCare's allegation that each charge represented the reasonable value of the item or service ManorCare provided Edith. Ray's response explained that the charges were "determined based upon the reasonable value of the time or service charged, the charges for such items by other facilities in the market and a cost basis evaluation as determined by ManorCare in setting prices based on its overall operating income and expenses." [*16] Id.

The McLeans contend that the FDCPA requires--at the time a debt collector asserts a debt--an accounting of how the amount was calculated. According to the McLeans, Ray's response fails to constitute a good faith, pre-suit rationale of a claimed debt, because it is merely "a list of factors that will be considered to support a later rationalization," Appellants' Br. 47, which they claim does not satisfy the requirements of the FDCPA.

The McLeans' position is unpersuasive, as they fail to cite any authority for this proposition. We agree with the district court that Ray's response clearly stated the basis for the quantum meruit figure: "a reasonable value of the services, as determined by the market, plus costs." J.A. 1001. Further, we agree with the district court that the McLeans have done no more than suggest that the numbers "smell fishy," id. 1002, which does not satisfy their burden in opposing summary judgment.

C.

The McLeans also allege that Ray violated the FDCPA when he falsely represented that he would not assert the 2006 contract (the contract signed upon Edith's first admission to ManorCare) as a basis for recovery and for attorney's fees when amending the Arlington Complaint. [*17] This allegation stems from a statement Ray made in a sworn affidavit he submitted to the district court that, before amending the complaint the first time, he "would inquire with [ManorCare] regarding the applicability of the 2006 contract and . . . would clean up the lawsuit if [he] confirmed that there was a problem with that part of the claim." Id. 561.

The McLeans interpret Ray's statement as an unconditional vow to amend the initial complaint to remove the breach of written contract claim and the claim for attorney's fees. The district court, however, correctly interpreted Ray's statement with the qualifier in context: that Ray would "clean up the lawsuit" if and when he confirmed the applicability of the 2006 contract, and not that he made an unconditional promise to remove the claim for attorneys' fees. Several obstacles--including the fact that ManorCare had misplaced Edith's file--prevented Ray from confirming the facts any sooner. The record shows that Ray amended the complaint to

remove the claim for attorney's fees as soon as he was able to determine that the 2006 contract did not support it. We thus agree with the district court that this claim lacks merit.

D.

The McLeans also [*18] allege that Ray violated the FDCPA by providing a false discovery response. According to the McLeans, Ray falsely provided the ManorCare national headquarters address and phone number as the contact information for several ManorCare employees, when he knew that those employees were not in fact based at the company's Ohio headquarters.

As to this claim, the district court correctly noted that there was neither factual nor legal support for the notion that Ray made a "false statement" or "misrepresentation" within the meaning of the FDCPA when he forwarded the list of employees from ManorCare to the McLeans. Assuming that Ray's action constituted a "representation" or "means of collecting a debt," the district court nevertheless concluded that it was not false, deceptive, or misleading, let alone "unfair or unconscionable" as prohibited by the act.

Again, the McLeans cite no authority to support their contention on appeal that the district court's reasoning is legally incorrect. To the contrary, we agree with the district court that there was nothing wrong or dishonest about Ray specifying that certain ManorCare employees could be reached through the company's headquarters.

E.

Finally, the [*19] McLeans seek to appeal a discovery order entered by the magistrate judge in this case. In their complaint, the McLeans asserted two separate FDCPA violations premised on the view that Ray abused the separate guardianship proceeding as a coercive debt collection tool.

In support of their claims, the McLeans propounded discovery directing Ray to admit that "Plaintiff James L. McLean, at all times hereto relevant, was properly managing Edith L. McLean's affairs." Id. 211. In response, Ray propounded interrogatories and requests for production of documents seeking information relating to James's management of Edith's financial affairs. When the McLeans refused to provide the information, the magistrate judge granted Ray's motion to compel. Rather than comply with the order, however, the McLeans opted to dismiss the two claims. At the same time, they objected to the magistrate judge's order, contending that it was an abuse of discretion and should be set aside. The district court overruled the objection, finding that "the information sought by Defendants is plainly relevant to Plaintiffs' claims . . . [and] Defendants are entitled to develop their response to Plaintiffs' allegations through [*20] discovery of all relevant documents." Id. 388.

On appeal, the McLeans argue that the magistrate judge and the district court erred in ordering the McLeans to disclose Edith's assets. They ask us to reverse the district court's order and to remand the case with instructions to reinstate the two counts alleging violations of the FDCPA pertaining to the guardianship claims.

We conclude, however, that this assignment of error is now moot, given that the McLeans elected to dismiss the claims rather than comply with the order. In any event, we discern no error, as we agree with the district court that the discovery was plainly relevant to the issues in the case.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.