# EXHIBIT D



**BEVERLY LYNCH, Plaintiff, vs. NELSON WATSON & ASSOCIATES, LLC, Defendant.**

**Case No. 10-2025-EFM**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

**2011 U.S. Dist. LEXIS 66031**

**June 21, 2011, Decided**

**PRIOR HISTORY:** *Lynch v. Nelson Watson & Assocs., LLC, 2010 U.S. Dist. LEXIS 67071 (D. Kan., July 6, 2010)*

**COUNSEL:** [*1] For Beverly Lynch, Plaintiff: J. Mark Meinhardt, Leawood, KS.

For Nelson Watson & Associates LLC, Defendant: Cary S. Smalley, Pamela J. Welch, LEAD ATTORNEYS, Franke Schultz & Mullen, PC, Kansas City, MO; Michael A. Klutho, LEAD ATTORNEY, Bassford Remele, A Professional Association, Minneapolis, MN; Christopher R. Morris, PRO HAC VICE, Bassford Remele, Minneapolis, MN.

**JUDGES:** ERIC F. MELGREN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ERIC F. MELGREN

**OPINION**

**ORDER**

Presently before the court is defendant Nelson Watson & Associates' (NWA's) motion for summary judgment (Doc. 39). For the following reasons, the court grants the motion.

**I. Background**

Plaintiff claims that NWA violated the Fair Debt Collection Practices Act (FDCPA). Plaintiff failed to pay amounts owed on a credit card, and the account was referred to NWA for collection. NWA's creditor client, G.E. Capital (G.E.), provided NWA with the last known home address for Plaintiff. Before attempting any communication with Plaintiff, NWA checked her credit report and found that it listed an updated address, which was actually the address of Ms. Janzen, a bankruptcy attorney who Plaintiff met with in 2008 regarding her various debts.[1] Although Ms. Janzen did not file [*2] a new bankruptcy for Plaintiff, she did informally write to a number of her creditors.

> 1 Although Plaintiff previously filed for bankruptcy protection, the account at issue was incurred post-bankruptcy.

In October and December 2009, NWA sent written notices addressed to Plaintiff to Ms. Janzen's office address regarding Plaintiff's debt, and received no response. NWA claims that it did not know the address actually belong to Ms. Janzen, while Plaintiff claims it was clearly a business address.

NWA also attempted to contact Plaintiff by phone, but never reached her, and never collected any amount from Plaintiff. Plaintiff was not aware of this attempted contact until her attorney in this action reviewed her caller id and informed her that some of the numbers belonged to NWA. Upon learning this information,

Plaintiff claims that she contacted NWA to direct them to stop calling, and was treated so rudely that she had to sit down for 30 minutes to recover. Plaintiff's phone records, however, reveal no instance in which Plaintiff ever called a phone number belonging to NWA.

Plaintiff filed this action on January 18, 2010, alleging that defendants violated the FDCPA by (1) continuously calling [*3] Plaintiff with the intent to annoy, abuse, and harass; (2) using abusive language; and (3) contacting Plaintiff even after discovering that Plaintiff was represented by an attorney. Defendant now moves for summary judgment.

## II. Standards

moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3] A fact is "material" when "it is essential to the proper disposition of the claim."[4] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

> 2  *Fed. R. Civ. P. 56(a)*.
> 3  *Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006)*.
> 4  *Id*.
> 5  *LifeWise Master Funding v. Telebank, 374 F.3d 917, 927 (10th Cir. 2004)*.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

> 6  *Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003)* [*4] (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*).
> 7  *Id*. (citing *Celotex, 477 U.S. at 325*.)

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

> 8  *Garrison v. Gambro, Inc., 428 F.3d 933, 935, 150 Fed. Appx. 819 (10th Cir. 2005)*.
> 9  *Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1197 (10th Cir. 2000)* (citing *Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)*).
> 10  *Adler, 144 F.3d at 671*.
> 11  *White v. York Int'l Corp., 45 F.3d 357, 363 (10th Cir. 1995)*.
> 12  *Bones v. Honeywell Intern, Inc., 366 F.3d 869, 875 (10th Cir. 2004)*.

Finally, [*5] summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

> 13  *Celotex, 477 U.S. at 327* (quoting *Fed. R. Civ. P. 1*).

## III. Analysis

Congress passed the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices."[14] The FDCPA regulates the activities of third party collectors and is designed to eliminate the abusive debt collection practices by requiring collectors to provide certain notifications to consumers and to refrain from abusive or misleading practices.

> 14  *15 U.S.C. § 1692(a)*; accord *Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir.2002)* (quoting *§ 1692(a)*).

In this case, plaintiffs contend NWA violated three specific provisions of the FDCPA by: (1) continuously calling Plaintiff with the intent to annoy, abuse, and harass; (2) using abusive language; and (3) contacting Plaintiff even after discovering that Plaintiff was

represented by an attorney. For the reasons explained below, the court disagrees.

### A. *Section 1692d*: **Intent to Annoy Abuse and Harass**

The FDCPA provides that "[a] debt collector may not engage in any [*6] conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."[15] *Section 1692d(5)* prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."[16] In determining liability, courts often consider the volume and pattern of calls sufficient to raise a triable issue of fact regarding intent to annoy abuse or harass.[17] Although there is some disagreement among district courts as to the specific volume and pattern of calls sufficient to raise a triable issue of fact, a federal district court in Kansas recently summarized several cases on this issue and held that 149 calls to plaintiff from a debt collection agency during a two month period did not constitute a violation of *§ 1692(d)*.[18]

> 15   15 U.S.C. § 1692d.
> 16   15 U.S.C. § 1692d(5).
> 17   *Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223, 2011 U.S. Dist. LEXIS 29730, 2011 WL 1102842, at *4 (D. Kan. March 23, 2011)*.
> 18   *2011 U.S. Dist. LEXIS 29730, [WL] at *6-7*.

In this case, the Court finds there is no evidence of an unacceptable pattern of calls. The record is lacking any indicia of the type of egregious [*7] conduct raising issues of triable fact when coupled with a high call volume. Specifically, NWA claims its records show that it placed a total of 56 calls over an approximately three month period. Of that total, NWA claims only 41 calls were placed to Plaintiff's home, while the other 15 calls were placed to another number that was later disconnected. Plaintiff counters that the exact number of calls could not be confirmed. In support of this assertion, Plaintiff cites to deposition testimony in which a representative of NWA testified about its record keeping. This court reviewed the deposition testimony, and found nothing to support Plaintiff's assertion that the number of calls could not be confirmed. Further, Plaintiff has failed to offer evidence to contradict NWA"s explanation of its phone records, and further fails to acknowledge Plaintiff's own phone records, which NWA claims matches its own phone logs.

Viewing the evidence in the light most favorable to Plaintiff, this Court finds that Plaintiff failed to meet her burden of showing that a genuine issue of material fact exists as to whether NWA's phone calls to Plaintiff demonstrate an intent to annoy, abuse, or harass in violation [*8] of *§ 1692(d)*. As such, summary judgment is granted on this claim.

### B. *Section 1692d(2)*: **Abusive Language**

*Section 1692d(2)* prohibits "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader."[19] Plaintiff alleges that she placed a single call from her home to an agency she believes was NWA, and claims she was treated rudely. NWA counters that Plaintiff's testimony on the subject during deposition was confused and self-contradictory, and that she ultimately acknowledged that she also had phone contacts with other agencies who were calling regarding unrelated debts. Further, NWA claims that Plaintiff's and NWA phone records reveal that no such call ever occurred. Specifically, NWA argues that it produced its collection notes and phone logs, all of which confirmed Plaintiff never answered the calls placed by NWA, and that Plaintiff never made any calls from her home phone to NWA. Additionally, NWA subpoenaed Plaintiffs phone records, which it claims confirms its own records. Moreover, Plaintiff testified at her deposition that she made a handwritten note of the phone number she dialed which resulted in the rude call, but she no [*9] longer has that note.

> 19   15 U.S. C. § 1692d(2).

This court has reviewed the documentary evidence in record. Plaintiff's general statements regarding the call are simply not sufficient to overcome the evidence submitted by NWA.[20] As such, summary judgment is proper.

> 20   *See Fashakin v. Nextel Commc'ns, No. 05-3080, 2009 U.S. Dist. LEXIS 25140, 2009 WL 790350 20 (E.D.N.Y. March 25, 2009)* (citing *Bickerstaff v. Vassar Oil, 196 F.3d 435, 452 (2d Cir. 1998))*.

### C. *Section 1692c(a)(2)*: **Plaintiff's Representation by Counsel**

*Section 1692c(a)(2)* prohibits a debt collector from communicating directly with a consumer "if the debt

collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain such attorney's name and address."[21]

[21] 15 U.S. C. § 1692c(a)(2).

In this case, there is no evidence in the record from which it can be reasonably inferred that NWA contacted Plaintiff directly regarding any debt for which NWA knew Plaintiff was represented by counsel. Rather, Plaintiff makes the conclusory allegation, without citation to any document, deposition testimony, or affidavit, that the address on the letters was clearly to a business, and not a residence. As such, summary [*10] judgment is proper.

Plaintiff also alleges that her attorney notified the original creditor, G.E., that she was represented by an attorney regarding the debt, and that NWA should thus have implied knowledge that she was represented by counsel. In support of this claim, Plaintiff attaches a letter dated August 29, 2008, written by Ms. Janzen and addressed to "GE Money Bank". In the single page letter, Ms. Janzen informs G.E. that she believes Plaintiff is judgment proof, without referring to a specific account other than the mention of Plaintiff's name. Further, Ms. Janzen never states that she is representing the Plaintiff. Indeed, Ms. Janzen is not and did not ever represent Plaintiff.

NWA counters that a creditor's knowledge that a consumer is represented by an attorney may not be imputed to the agency. To support its claim, NWA relies on *Schmitt v. FMA Alliance*, in which the Eighth Circuit held as a matter of first impression that a debt collector must have actual knowledge of a debtor's representation to violate the FDCPA, and that a creditor's knowledge will not be imputed on the debt collector.[22] The *Schmitt* court reasoned that its holding requiring actual knowledge comported with [*11] established agency law, which dictates that while the knowledge of the agent is imputed to the principal, the converse is not true.[23] In its order, the *Schmitt* court recognized a circuit split, in that some courts have construed the FDCPA to require actual knowledge of attorney representation, while others permit actual or implied knowledge.[24]

[22] 398 F.3d 995 (8th Cir. 2005).

[23] *Id.* at 997 (citing *S.O.G.-San Ore-Gardner v. Mo. Pac. R.R. Co.*, 658 F.2d 562, 567 (8th Cir. 1981) (stating that an agent cannot be imputed with information which the principal failed to disclose); *Siharath v. Citifinancial Servs.*, 285 B.R. 299, 304 (Bankr. D. Minn. 2002) (holding that while an agent's knowledge is imputed to the principal due to the identity of interests that is presumed when an agent acts within the scope of an agency relation, this rule "does not operate in the converse, and the agent cannot be imputed with the information which its principal has failed to give it.")).

[24] *Id.* (citing *Powers v. Prof'l Credit Servs.*, 107 F.Supp.2d 166, 169 (N.D.N.Y. 2000) (creditor's actual knowledge can be imputed to collection agent "when the creditor has such knowledge and fails to convey it to . . . the debt [*12] collector")); *but cf. Randolph v. I.M.B.S., Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) (stating that creditor's knowledge is not imputed to debt collectors).

Although the Tenth Circuit has not specifically addressed this issue, this court finds the Eighth Circuit's reasoning persuasive. As such, any knowledge that G.E. had regarding the Plaintiff's alleged attorney representation is not imputed to NWA. Because Plaintiff failed to produce any evidence that NWA had prior knowledge that the updated address it obtained actually belong to a bankruptcy lawyer who she had once consulted, and because any knowledge that G.E. may have had about possible representation based an a letter from Ms. Janzen is not imputed to NWA, summary judgment is proper on this claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgement (Doc. 39) is hereby GRANTED.

**IT IS SO ORDERED**.

Dated this 21st day of June, 2011.

/s/ Eric F. Melgren

ERIC F. MELGREN

UNITED STATES DISTRICT JUDGE